IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

        v.

HOLLI WRICE,

    Defendant.

Case No. 10-cr-40065-JPG-1

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Holli Wrice ("Defendant" or "Wrice") motion to reduce sentence. (Doc. 153). Wrice moves for a motion to reduce under 18 U.S.C. § 3582(c)(1)(A), a motion for compassionate release. The United States of America ("Government") opposes the motion. (Doc. 160). Wrice has filed a reply. (Doc. 163). This is Wrice's third motion for compassionate release.

**I.**     **Compassionate Release**

Wrice argues her medical conditions, family circumstances, and an excessive force claim against the BOP are "extraordinary and compelling reasons" justifying release. Specifically, Wrice points to her enlarged heart, hypertension, spot on right lung, asthma, post-COVID fatigue, vertigo, iron and vitamin D deficiency, bone loss in jaw, and heavy menstruation. (Doc. 153). Additionally, Wrice states her stepfather, Samuel A. Wrice, who is 81 years of age, needs assistance with daily living. Lastly, Wrice indicates that an excessive use of force incident that she had while having a mental breakdown is an additional "extraordinary and compelling reason" that justifies her release.

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified

at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>> (i) extraordinary and compelling reasons warrant such a reduction. . .
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of

"extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(2).[1] The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

> **(A)** **Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> * * *
>
> **(D)** **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180.  The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis.  *Gunn*, 980 F.3d at 1180.

Wrice also indicates that proposed amendments by the US Sentencing Commission, which were delivered to the United States Congress on April 27, 2023, allow this Court an additional basis for "extraordinary and compelling reasons" justifying release. Outside congressional action, the amendments are effective November 1, 2023. The proposed amendments cite to new expansions to the list of specified extraordinary and compelling reasons, including "Family Circumstances."

> The third modification to the family circumstances ground for relief adds a provision that applies when the defendant establishes that similar circumstances exist with respect to a person whose relationship with the defendant is similar in kind to that of an immediate family member, and the defendant would be the only available caregiver. This provision recognizes the diversity of family structures in America, and that caretaking needs within all of those family structures may give rise to equally extraordinary and compelling circumstances. Relief is available under this subsection only if the defendant establishes both the qualifying relationship and that the defendant is the only available caregiver.

United States Sentencing Commission, Amendments to the Sentencing Guidelines, USSG §1B1.13, p.s. (April 27, 2023), (effective date November 1, 2023), https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023 (internal citations omitted).

---

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

## II.     Analysis

On April 7, 2021, Holli Wrice pled guilty to two counts – armed bank robbery and brandishing a firearm during and relating to a crime of violence. (Docs. 41 and 42). On July 7, 2011, this Court sentenced Wrice to a total of 420 months imprisonment. According to the transcript of Wrice's co-defendant trial where Wrice testified, Wrice and Richard Anderson robbed the Capaha Bank in Tamms, Illinois. According to the Pre-Sentence Report ("PSR") there were a total of 13 victims identified in this offense and the bank suffered a loss of $14,248. (Doc. 56, PSR at ¶¶ 45-46). The Government filed a Rule 35 motion on Wrice's behalf and asked the Court to reduce her sentence by 140 months. The Court granted the motion and Wrice is now serving the remainder of a 280-month sentence. (Doc. 88). Wrice's projected release date is August 15, 2029. *See* BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited June 6, 2023). She is currently incarcerated at Waseca FCI in Waseca, Minnesota, and is 44 years old. *Id*.

Wrice moves for compassionate release based on three reasons for "extraordinary and compelling" reasons. The Court will address each of these separately.

### a.     Extraordinary Family Circumstances

Wrice alleges that her stepfather Samuel A. Wrice, 81 years old, needs assistance with daily living including bathing, grooming, cooking, shopping, laundry and medical appointments. The Government argues that the current guideline does not provide relief for individuals like Wrice who are seeking release to care for a parent or stepparent. (Doc. 160 at 13). In short, the Government argues that family circumstances do not amount to "extraordinary and compelling" reasons justifying release. However, the new proposed guidelines state that such relief based on family circumstances is available only if the defendant establishes both the qualifying

relationship and that the defendant is the only available caregiver. *See also See United States v. Bucci*, 409 F. Supp. 3d 1, 2 (D. Mass. 2019).

Wrice argues that she is the only caregiver available for her stepfather. (Doc. 153 at 2). The Government argues that is incorrect, and the PSR states that she is not the only caregiver as her stepfather has four other children who are available to assist him. PSR at ¶ 64. The Government argues that the fact it would be more convenient for Wrice to be released and assume the caregiver role does not amount to "extraordinary and compelling." The Government argues that convenience of taking care of her stepfather does not trump the discharge of her criminal conviction.

The Court finds that her family circumstances do not justify release. The proposed amendments require the petitioner to show that she has a qualifying relationship with the family member, and that she be the only caregiver available. Other than Wrice's unsupported statements, the Court is without basis to find Wrice is her stepfather's only caretaker and that her stepfather requires a caretaker for his medical needs or aging. Wrice provides no statements from other family members, no affidavits or letters from medical professionals, and no other verifiable evidence to show that she is the only caretaker available or that the stepfather requires a caretaker. The Court agrees with the Government that Wrice has not met her burden of showing she is the only caretaker available, and at most, may have shown that she is the most convenient individual to care for her stepfather. Because Wrice has not met her burden under the proposed amendments to the First Step Act, the Court finds that Wrice's family circumstances are not an "extraordinary and compelling" reason justifying release.

Additionally, Wrice, in a reply, argues that the proposed amendments to the First Step Act regarding an "unusually long sentence" are also an "extraordinary and compelling" reason

justifying release. Wrice argues that her sentence that her sentence would be 18 years shorter if she were sentenced today. First, Wrice argues this as a new argument in the instant motion in a reply. The Court will not consider the argument because " '[a]rguments raised for the first time in a reply brief are waived.' " *Damato v. Sullivan*, 945 F.2d 982, 988 n. 5 (7th Cir.1991) (*quoting Ippolito v. WNS, Inc.*, 864 F.2d 440, 455 n. 12 (7th Cir.1988)). Additionally, Wrice made this argument in a previous motion for compassionate release, and the Court denied the fact her sentence disparity was an extraordinary and compelling reason justifying release. *See* Doc. 144 at 4.

    b.  **Wrice's Medical Conditions**

Next, Wrice argues her she has serious medical conditions that justify her release. Specifically, Wrice points to her enlarged heart, hypertension, spot on right lung, asthma, post-COVID fatigue, vertigo, iron and vitamin D deficiency, bone loss in jaw, and heavy menstruation. (Doc. 153). The Government argues that the only conditions that could theoretically rise to the level of a "serious physical" condition per the guideline are her enlarged heart (cardiomegaly), high blood pressure, asthma, and a spot on her lung. The Government states that her medical records reveal these conditions are being managed by the BOP and are benign. (Doc. 160 at 16).

Her medical records indicate her health is being managed by the BOP. On April 5, 2022, her medical records indicate that her chest X-ray indicates that there is "[n]o acute cardiopulmonary disease." Additionally, the records indicate that her heart size is mildly enlarged but "[n]o evidence for congestive heart failure." (Doc. 160-1 at 1). Additionally, the medical record notes that her node on her right lung base is "compatible with a benign nodule and probably a small calcified granuloma." *Id*. Based on Wrice's medical records her enlarged

heart is mildly enlarged with no evidence she's in heart failure. Additionally, her spot on lung is benign. The medical team at BOP has been monitoring her situation since 2017. Additionally, Wrice is properly on medication for her asthma, with no need to have increased use. *Id*. at 2. Additionally, Wrice has already attempted to raise her hypertension and asthma as extraordinary and compelling reason justifying release, and the Court has denied such a claim. Wrice's medical records indicate that she is receiving adequate care for those issues and concerns. Additionally, to the extent that Wrice argues that the medical treatment has been delayed or otherwise constitutionally deficient, a motion for compassionate release is not the proper vehicle. In cases where a defendant challenges "the conditions under which he is being held, [the Seventh Circuit] has held that [he] must use a § 1983 or Bivens theory." *Glaus v. Anderson*, 408 F.3d 382, 386 (7th Cir. 2005). Wrice must pursue this argument in the district where she is confined after exhausting her administrate remedies.

      Wrice also argues that the prison facility in FCI-Waseca is not equipped to deal with COVID-19. The Court notes that Wrice has also refused the COVID-19 vaccine but points to the dangerous threat of the COVID-19 virus towards her health, especially in the correctional environment. (Doc. 153 at 4). If Wrice indeed refused to be vaccinated, which is against the advice of the CDC, this weighs against a finding of an extraordinary and compelling circumstance to justify relief. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). The Seventh Circuit Court of Appeals recently discussed and affirmed the reasoning in the *Broadfield* decision. Specifically, the Seventh Circuit rejected defendant's request to

reconsider *Broadfield*. *United States v. Clemons*, No. 21-2440, 2022 WL 1436801, at *1 (7th Cir. May 6, 2022) ("Clemons asks us to reconsider our decision in *Broadfield*, asserting that the CDC's understanding of vaccines has changed, and new variants are more likely to infect people who have been vaccinated or, like him, previously infected."). The Seventh Circuit reiterated that "[d]espite the threat of new coronavirus variants," an inmate's risk of COVID-19 cannot justify compassionate release absent an inability to receive or benefit from a vaccine. *Id*. at *2.

Other courts within this state have stated it is "inconsistent for [a defendant] to both claim fear of risk of contracting the virus while refusing medical treatment that would drastically reduce his risk." *United States v. Garcia*, 2021 WL 1499312, at *3 (C.D. Ill. Apr. 16, 2021). In other words, a defendant "cannot, on the one hand, listen to the Centers for Disease Control's advice about who is most at risk of serious illness, but then ignore the same agency's advice to get a vaccine." *United States v. BaptisteHarris*, 2021 WL 1583081, at *2 (D. Me. Apr. 22, 2021). Consequently, a refusal to be vaccinated "weighs against a finding of extraordinary and compelling circumstance to justify relief." *Garcia*, 2021 WL 1499312, at *3.

Wrice is able to refuse the vaccine. However, she cannot simultaneously claim he is high risk for the virus and may face severe complications and then refuse the vaccine, which the Centers of Disease Control and Prevention has shown to offer protection against the virus for immunosuppressed people. COVID-19 Vaccines for Moderately to Severely Immunocompromised People, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#immunocompromised (last visited June 7, 2023). The Court therefore cannot find that there are "extraordinary and compelling" reasons to justify releasing Wrice based on generalized fears of COVID-19.

The Court acknowledges the particular danger posed to prisoners, who live in close quarters and often cannot practice social distancing. But, stated above, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release ..." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). While *Broadfield* was issued before the rise of the Omicron variant of the COVID-19 virus, *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022), the Court notes that the BOP has reported there are 0 inmates who have tested positive for the virus in FCI-Waseca. Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited June 7, 2023).

Wrice's medical issues are not "extraordinary and compelling" reasons to justify release.

c.  **Wrice's Excessive Force Claim**

Wrice also points to a claim of excessive force as an extraordinary and compelling reason justifying release. Wrice alleges that she was having a mental health episode, attempted to commit suicide, and the correctional officers subsequently used excessive force on her. The Government argues that Wrice only exhausted her medical and family medical condition claim, and not the excessive force claim. Wrice replies that the excessive force claim was alleged to help contextualize the prison environment.

Exhaustion defense "is a mandatory, claim-processing rule and therefore must be enforced when properly invoked." *United States v. Williams*, 987 F.3d 700, 702–03 (7th Cir. 2021); *United States v. Sanford*, No. 20-2445, 986 F.3d 779, 782 (7th Cir. Jan. 25, 2021) (emphasis original). The Seventh Circuit recently decided the issue of issue exhaustion, or whether an inmate is required to present the same or similar ground for compassionate release in a request to the BOP as in a motion to the Court. *Williams*, 987 F.3d at 703. The Seventh Circuit

looked at the Prison Litigation Reform Act and held that § 2582(c)(1)(A) closely resembles the PLRA. Specifically, the Seventh Circuit held that the purpose of the PLRA and compassionate release is similar – proper exhaustion "of available administrative remedies in order to afford prisons an opportunity to address issues before they are brought to federal court." *Id*. at 703-04 (citing *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)). Therefore, since Wrice is using her excessive force claim as an independent reason, and a "extraordinary and compelling reason" justifying release, she needed to exhaust her claim to the BOP. Failure to do so runs afoul to the exhaustion requirement and prison's ability to address the issue before filing in Court. This is especially true because of the fact and institution-specific claim Wrice alleges.

A motion for compassionate release is not the proper vehicle to bring such excessive force civil rights claims. *United States v. Macedo-Flores*, No. 3:13-CR-00281-O-4, 2023 WL 2229010, at *3 (N.D. Tex. Feb. 24, 2023); *United States v. Coutinho-Silva*, Criminal Action No. 10-002, 2022 WL 3448636, at *5 (E.D. Pa. Aug. 17, 2022) ("Construed as a claim that he is being held in unconstitutional conditions of confinement, a motion for compassionate release is not the proper vehicle to bring such a claim.") (citing *Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir. 2002); *Doe v. Pa. Bd. of Prob. & Parole*, 513 F.3d 95, 99 n.3 (3d Cir. 2008)); *see also United States v. Smith*, Case No. 3:17-cr-00025-TMR-1, 2020 WL 6702173, at *6 n.8 (S.D. Ohio Nov. 13, 2020) (collecting cases) ("With respect [to] Smith's argument concerning the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments, a compassionate release motion is not the appropriate mechanism or vehicle to raise such claims of alleged constitutional violations."). Therefore, the Court finds that Wrice's arguments regarding her excessive force claim are improperly brought under a motion for compassionate release and

cannot be considered.

The Court does not find Wrice's rehabilitation justify "extraordinary and compelling" circumstances to justify compassionate release. Wrice's claim that her post-conviction rehabilitation supports his compassionate release request is not extraordinary and compelling because the Court cannot find that Defendant's good behavior and programming is so uncommon that is qualifies as "extraordinary" or so forceful that it is "compelling." *United States v. Proctor*, No. 5:11-cr-30-TBR, 2021 WL 1992131, at *8 (W.D. Ky. May 18, 2021), reconsideration denied, No. 5:11-cr-030-TBR, 2021 WL 5912160 (W.D. Ky. Dec. 14, 2021); *See United States v. Powell*, No. 2:12-cr-20052-2, 2021 WL 613233, at *3 (E.D. Mich. Feb. 17, 2021). While the Court lauds Wrice's efforts in prison and urges Wrice to continue, that does not provide a basis to this Court to reduce Wrice's sentence or release her.

### d. Section 3553(a) factors

Even though the Court finds that there is no extraordinary and compelling reason that warrants release, the Court will still evaluate how the § 3553 sentencing factors weigh against release. *United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021) ("Because Ugbah cannot establish an extraordinary and compelling reason for release, it was unnecessary for the district judge to consider the § 3553(a) factors at all."). Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense and to provide just punishment (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) to afford adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a).

The Government argues that Wrice's conduct at the Capaha Bank robbery renders her

undeserving of compassionate release. The Government points to the twelve victims who were traumatized during the bank robbery. Wrice replies that she is not a danger to anyone and points to cases across the federal district courts where courts have granted compassionate release for crimes such as murder. The Court finds it the factors right now weigh against release. Wrice's actions contributed to the victimization of 12 ordinary citizens at the Capaha Bank. Wrice committed two armed robberies and has already received a sentence reduction based on her substantial assistance to the Government. The nature and circumstances of the offense therefore weigh against release. Additionally, this offense was serious, and a denial of compassionate release would both reflect the seriousness of the offense, provide just punishment, and serve to deter similar conduct in our society.

### III. Conclusion

For these reasons, the Court hereby **DENIES** Wrice's Motion for Compassionate Release.

**IT IS SO ORDERED.**
**Dated: June 15, 2023**

/s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**