UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

          Plaintiff,

v.

          Case No. 4:10-cr-40065-JPG

HOLLI WRICE,

          Defendant.

## MEMORANDUM AND ORDER

This matter comes before the Court on a motion for compassionate release. (Doc. 165). The Defendant filed her motion on November 6, 2023. As Wrice does not have an unusually long sentence and the § 3553(a) factors weigh against release, the Court **DENIES** the motion.

## I.    INTRODUCTION

The Defendant, Holli Wrice, is a convict incarcerated at the Federal Correctional Institution in Waseca, Minnesota. The motion currently before the Court is Wrice's fourth motion for compassionate release in the past three years, (Docs. 114, 126, 153), following a failed § 2255 petition, (Case No. 3:16-cv-00663-JPG), and multiple attempts to file a successive § 2255 petition. In her present motion, Wrice raises arguments that have previously been considered and rejected by this Court. Additionally, Wrice argues that she qualifies for compassionate release under the new Unusually Long Sentence Provision (hereinafter "ULS").

The Government opposes Wrice's motion for compassionate release, arguing that she does not qualify for a ULS reduction. Moreover, the Government argues that the United States Sentencing Commission (USSC) (hereinafter "Commission") exceeded their statutory authority by adopting Amendment 814—the amendment that added "unusually long sentence[s]" to the list

1

of "extraordinary and compelling reasons" for compassionate release. This highly controversial decision by the Commission has generated a split within the Seventh Circuit. Now that *Chevron* has been overturned and courts have been directed to use *Skidmore* deference, *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) (overruled by *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024)), *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), it is unclear how much of the little available case law is even still valid. As the split will likely be resolved by the Court of Appeals, and Wrice's motion can be resolved without determining the lawfulness of the Commission's actions; the Court need not address that issue here.

## II.    <u>BACKGROUND</u>

In 2008, Wrice and her accomplices committed two armed robberies within a few months of each other. First, she robbed a pawnshop in Sikeston, Missouri (hereinafter "Sikeston robbery"); then she robbed the Capaha Bank in Tamms, Illinois (hereinafter "Tamms robbery"). (Doc. 56, 169). On March 13, 2009, Wrice was arrested in Missouri for the Sikeston robbery. She was charged and convicted of, *inter alia*, a violation of 18 U.S.C. § 924(c).

Approximately ten days before she was due to be sentenced for the Sikeston robbery, on January 11, 2011, Wrice was charged with armed bank robbery and brandishing a firearm during and relating to a crime of violence in a superseding indictment for the Tamms robbery; which included another § 924(c) charge. (Doc. 7). On April 7, 2011, Wrice pled guilty to the superseding indictment in this case. (Doc. 38). The Court sentenced Wrice to 300 months on the § 924(c) charge and 46 months on the brandishing charge. Her sentences were to be run consecutively for a sum of 346 months. This Court also ordered that her sentence for the Tamms robbery would run consecutive to her sentence for the Sikeston robbery—which was imposed by a district court in the Eastern District of Missouri six months earlier. (Case No. 09CR084, E.D.

2

Mo.). As there were 72 months left on that other sentence, the combined total time of imprisonment for Wrice was 420 months. (Doc. 64).

The primary reason for Wrice's long sentence was her "stacked" § 924(c) offenses. Under then existing law, though Wrice's § 924(c) offense resulting from the Sikeston robbery had not been finalized, that offense counted towards her sentence calculation for the Tamms robbery. As a result, Wrice's § 924(c) offense from the Tamms robbery was considered a subsequent § 924(c) offense. Subsequent § 924(c) offenders are subject to a mandatory twenty-five-year minimum sentence. However, under current law, a § 924(c) offense must be finalized before it can be considered a subsequent § 924(c) offense for the sentence calculation. Wrice moves to have her sentence adjusted accordingly.

### III.   LEGAL STANDARD

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>> (1) in any case—
>>> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release. Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

> imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>> (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).[2] The policy statement further defines "extraordinary and compelling reasons" to include, *inter alia*, cases where a defendant qualifies for a ULS reduction. The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied their burden.

Under Amendment 814, defendants may move for compassionate release if they are serving an "unusually long sentence.":

> Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

4

§ 1B1.13(b)(6). Essentially, to qualify for a ULS reduction, a defendant must show that:

(1) Their sentence is "unusually long;"

(2) They have served at least ten years of that sentence;

(3) The law has changed; and,

(4) As a result of that change, there would be a "gross disparity" between a sentence imposed today and their current sentence—after full consideration of the individualized circumstances.

If a defendant satisfies this criterion, then "[the] change in the law . . . may be considered in determining whether the defendant presents an extraordinary and compelling reason" for compassionate release. *Id.*

If a defendant does *not* qualify, a change in law *cannot* be considered when evaluating whether the defendant presents "extraordinary and compelling reasons." However, if a defendant can show they qualify for compassionate release on *other* grounds, a change in law "may be considered for purposes of determining the *extent*" of a reduction. USSG § 1B1.13(c) (emphasis added) (hereinafter "Limitation Provision").

Essentially, if a prisoner does not qualify for ULS, a change in law cannot be grounds for compassionate release—neither in whole nor in part. However, if a prisoner can establish other grounds for compassionate release, then a change in law can be considered in determining a new appropriate sentence.

Regardless, if a defendant proves "extraordinary and compelling reasons" exist for a reduction, the Court then considers the § 3553(a) factors in determining whether compassionate release is warranted. If the 3553(a) factors weigh against compassionate release, a court can deny the motion on those grounds.

IV.   **ANALYSIS**

A. **Previous Arguments**

Wrice raises arguments that mirror her previous motions; including her medical circumstances in light of COVID-19, her family circumstances, and her efforts at rehabilitation. Wrice does not provide any new facts that would change the Court's previous analysis.

Wrice's medical condition has not deteriorated; her step-father—who she claims requires a primary caretaker—ostensibly still has four other children to care for him, and, while Wrice's additional efforts at rehabilitation are commendable, they are ultimately irrelevant because rehabilitation alone is not grounds for compassionate release.

The Court detailed why the 3553(a) factors weigh against compassionate release last year:

> The Court finds [that] the [3553(a)] factors . . . weigh against release. Wrice's actions contributed to the victimization of 12 ordinary citizens at the Capaha Bank. Wrice committed two armed robberies . . . . The nature and circumstances of the offense therefore weigh against release. Additionally, this offense was serious, and a denial of compassionate release would both reflect the seriousness of the offense, provide just punishment, and serve to deter similar conduct in our society.

(Doc. 164). Now, as then, the sentencing factors weigh against Wrice's release.

Wrice cites several out-of-circuit cases to argue that her rehabilitation should outweigh the other 3553(a) factors that this Court previously ruled did not warrant compassionate release. Her argument is unpersuasive. Wrice claims that she has entirely rehabilitated and that her continued incarceration is a "colossal waste of time and resources." (Doc. 173). The American criminal justice system has several goals, § 3553(a) lays them out in detail:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

6

(A) to reflect the seriousness of the offense, to promote respect for the law,
and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a). Rehabilitation is one goal among many. If, as Wrice suggests, rehabilitation

were *only* weighed against punishment, her argument would be more persuasive—but it is not.

Wrice contends that deterrence should not be a factor in her sentence. She argues that

some experts believe that sentences provide inadequate deterrence for criminal conduct.

Regardless of her views, a court is required by statute to consider deterrence in imposing and

adjusting sentences—whether specific deterrence or general deterrence. Arguing that an existing

sentencing factor should no longer be a sentencing factor is an argument best made to the

legislature, not the judiciary.

Briefly, motions for compassionate release are intended for *extraordinary and*

*compelling* reasons. They should not be filed annually in the vain hope that the Court will

reverse course and suddenly find merit in arguments that it has thrice before found

meritless. This is Wrice's fourth motion for compassionate release. Wrice is reminded

that filing duplicative motions and raising frivolous arguments that have previously been

rejected with no new material facts may lead to filing restrictions in the future.

### B.  Unusually Long Sentence Provision

While nearly all of Wrice's claims have been raised and rejected before, she does ask for

relief on a new basis: she argues she is entitled to compassionate release because she has an

"unusually long sentence."

Presuming *arguendo* that the Sentencing Commission had the authority to add ULS as a

possible reason for compassionate release, Wrice fails to satisfy those requirements. Yet, even if

she did qualify for a ULS reduction, the § 3553(a) factors heavily weigh against compassionate release, as previously detailed.

To qualify for a ULS reduction, Wrice must show that she has served ten years of her sentence, her sentence is "unusually long," the law has changed, and that there would be a "gross disparity" between her current sentence and a hypothetical sentence if imposed today.

Wrice was sentenced in 2011 for both crimes, so she has served at least ten years of her sentence. The law surrounding § 924(c) stacking has changed; now, a predicate § 924(c) offense must be finalized before the twenty-five year mandatory minimum applies. If Wrice were to be resentenced under current law, her sentence would be significantly shorter than it is currently. Therefore, Wrice has satisfied three out of the four elements required for a ULS reduction. However, Wrice has failed to show that she received an "unusually long" sentence. For that reason, she cannot establish that she is entitled to a ULS reduction and, accordingly, has failed to establish extraordinary and compelling reasons for compassionate release.

### 1.  Determining What Qualifies as "Unusually Long"

To receive a ULS reduction, a defendant must show that she received a sentence that is "unusually long." Notably, the criteria is not that a defendant's sentence is "long," "very long" or "extremely long;" the sentence must be *unusually* long.

The Sentencing Commission did not provide guidance on what qualifies as "unusually long" so the Court will use the plain meaning of the word. "Unusual" denotes "something different from what is usual or normal," *Unusual*, OXFORD ADVANCED AMERICAN DICTIONARY, https://www.oxfordlearnersdictionaries.com/definition/american_english/unusual?q=unusual (last visited Jul. 23, 2024); something "different from others of the same type in a way that is surprising, interesting, or attractive." *Unusual*, CAMBRIDGE ADVANCED LEARNER'S DICTIONARY

& THESAURUS, https://dictionary.cambridge.org/dictionary/english/unusual (last visited Jul. 23, 2024). If an "unusual" sentence is "not usual" then it begs the question of what sentences qualify as "usual." In other words, if a defendant claims their sentence is a "break from the norm," the Court must determine what is the "norm" that the sentence breaks from.

Initially, there does not appear to be a clear direction on what sentences a court should use for comparison. However, given the Sentencing Guidelines were promulgated to create uniform sentences for similar defendants with similar characteristics, it seems that the Sentencing Guidelines would be the most appropriate benchmark. By that metric, whether a movant's sentence is "unusually" long depends on how far beyond the Guideline range a defendant's sentence is. Yet, it is unclear whether a court should perform that analysis using the current Sentencing Guidelines or the Sentencing Guidelines as they existed at the time of the defendant's sentencing.

Wrice implies that the Court should use the *current* Sentencing Guidelines to establish the point of comparison. Adopting Wrice's interpretation would mean that, to determine whether a movant's sentence is "unusually" long, the Court would calculate the sentence of a similarly situated defendant under the current Guidelines and ask whether the movant's sentence is "unusually" longer by comparison.

The Court declines to adopt this interpretation.

Ultimately, Wrice's interpretation would render the "unusually long" element superfluous. As explained before, to qualify for a ULS reduction, a movant must satisfy multiple conditions. Receiving a sentence that is "unusually long" is one condition, but demonstrating that there would be a "gross disparity" is another.

The "gross disparity" analysis necessarily requires that a court calculate the *movant's*

sentence under the present law, and compare that to the movant's current sentence. Under Wrice's proposed interpretation, the "unusually long sentence" analysis would require that a court calculate what a *similarly situated defendant's* sentence would be under the present Guidelines, and compare that to the movant's current sentence.

Under Wrice's interpretation, the analyses for "unusually long" and "grossly disparate" would be nearly identical. Both analyses require measuring the difference between the movant's current sentence and a new sentence. The only real difference appears to be that for one analysis the court asks whether the difference between sentences is "unusual" whereas, in the other analysis, the court asks whether the difference between sentences is "gross." [3]

Wrice may argue that, even though the analysis is essentially the same, there is a quantifiable difference between "unusually long," and "gross[ly] dispar[ate]," and, therefore, they are not redundant. There may be a quantifiable difference for what qualifies as "unusually long" and what qualifies as a "gross disparity," but this weighs against Wrice's interpretation.

On first impression, "gross disparity" implies a larger gap between sentences than a gap caused by an "unusually long" sentence. Consequently, it is difficult to envision a scenario where a defendant demonstrates a "gross disparity," but fails to show that their sentence is "unusually long." The "unusually long" element would merely be a lower threshold for the "grossly disparate" element. For all intents and purposes, every "gross disparity" would qualify as

---

[3] As the Guideline range is determined by the movant's offense level and criminal history, it is difficult to imagine a scenario where a movant's hypothetical new sentence would be significantly different than a similarly situated defendant's new sentence. The only foreseeable situation where there would be a distinction between the different analyses is when there is a significant difference between a movant's sentence under new *law* and a similarly situated defendant's new sentence under the new *Guidelines*. While the ULS provision excludes non-retroactive Guideline changes from being considered, changes to the Guidelines that are significant enough to create a "gross disparity" usually come from changes in law.

"unusually long," but not all "unusually long" sentences would qualify as creating a "gross disparity." If two elements must be satisfied, but one element is simply a lower threshold for the other, the element with a lower threshold is superfluous.[4] As a result, under Wrice's proposed interpretation, the "unusually long" element would be entirely superfluous.

The syntax of the ULS provision also cuts against Wrice's interpretation. The syntax implies a logical order of operations. The ULS Provision begins with two "if" conditions ("unusually long sentence" and "served ten years of that sentence") to establish an initial pool of eligible defendants. This is followed by a qualifier ("but only" if there is a "gross disparity"), that filters that eligibility pool. A court *begins* by determining whether a movant received an "unusually long" sentence, *then* asks whether they have served ten years of that sentence, and *lastly* evaluates whether there would be a gross disparity. Following this order of operations is irrelevant to the outcome—whichever condition comes first, second, or third; it would not change which movants are eligible and which are not. However, while the order of these conditions does not affect the *outcome*, it does show that the Sentencing Commission envisioned a class of movants who received an "unusually long" sentence, had served ten years of that sentence, but were then excluded because their sentences did not create a gross disparity—that would be entirely unnecessary if the elements were meant to be redundant. If the Sentencing Commission intended courts to use identical measures for "unusually long" and "grossly disparate," the Commission would not have created a broad pool of eligibility based on one

---

[4] For example, if a job application states that applicants "must be domiciled in the United States" and "must be domiciled in the State of Illinois," the requirement that the applicant be domiciled in the United States is superfluous. Because there is no part of Illinois that is outside the United States, being domiciled in Illinois necessarily satisfies the requirement that the applicant also be domiciled within the United States; therefore, the first condition is superfluous.

metric, and then narrowed that pool of eligibility based on that same metric.[5]

Generally, elements are independent variables. The Sentencing Commission would not have laid out two *distinct* elements as criteria for a ULS reduction if one of those elements was entirely superfluous or redundant. This suggests that courts were not meant to use current Guidelines sentences to establish what qualifies for a "usual" sentence by comparison.

Since sentences for similarly situated defendants under the *current* Guidelines should not be used as the benchmark for determining what qualifies as a "usual" sentence, the only alternative is to use sentences for similarly situated defendants under the Guidelines as they existed at the time of the movant's sentencing. As the movant's original Guideline range provides the most efficacious method for determining the sentence for similarly situated defendants, a court need only compare the movant's sentence with their original Guideline range and ask whether the movant's sentence is "surprising[ly]" longer than the Guideline range.

In summary, a movant receives an "unusually long" sentence when their sentence is "unusually" longer than their Guideline range at sentencing. A small upward variance would not qualify as "unusually long" because "unusualness" requires that the extent of the upward variance be "surprising" or otherwise notable enough to qualify as "unusual."[6]

---

[5] For example, it would be redundant for a job application to state "applicants who were born in the United States and are domiciled in Illinois will receive a confirmation email, but only if they were born in Springfield, IL." It would be redundant to create a broad condition ("born in the United States") followed by a narrower condition ("born in Springfield, IL") when the narrower condition alone would be sufficient. e.g. "applicants who are domiciled in Illinois and were born in Sprinfield, IL, will receive a confirmation email."

[6] While this may seem similar to a substantive reasonableness inquiry, it is distinct. When analyzing whether a sentence is substantively reasonable, the Court of Appeals asks whether a sentencing court gave "meaningful consideration to the factors enumerated in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines, and arrive[d] at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Rosen*, 726 F.3d 1017, 1027 (7th Cir. 2013) (quoting *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008)). In contrast, the "unusually long sentence" analysis

### 2.  **Wrice's Sentence is not Unusually Long**

At the time of Wrice's sentencing, any defendant who had two § 924(c) offenses, even if one of those offenses had not been finalized, was subject to a mandatory minimum of 300-months. 18 U.S.C. § 924(c)(1)(C)(i). Wrice had two § 924(c) offenses and, likewise, received the mandatory minimum of 300-months.

Wrice pled guilty to Armed Bank Robbery. After reviewing the Presentence Investigation Report, Wrice was sentenced at the top of the Guideline range, but still within the range. Therefore, Wrice's sentence is not out of the ordinary for a similarly situated defendant.

As the law existed at Wrice's sentencing, any defendant convicted of a § 924(c) offense must serve that sentence consecutively with any other sentence they received. 18 U.S.C. § 924(c)(1)(D)(ii). Wrice committed an a § 924(c) offense and an additional crime; as required by statute, those sentences were imposed consecutively. Again, this is not a break from the norm.

Six months before Wrice's sentencing, she was sentenced in Missouri for the Sikeston robbery. The Sikeston robbery was distant enough from the Tamms robbery in time to be considered a separate course of conduct. Generally, when a defendant's criminal conduct is derived from a separate course of conduct, defendants receive a consecutive sentence—especially when a defendant has already been sentenced in another case in different jurisdiction. Here, Wrice's sentence was imposed consecutively to her sentence for the Sikeston robbery—most defendants in a similar position would receive a consecutive sentence.

The Court has also reviewed the sentence imposed by the district court in the Eastern District of Missouri for the Sikeston robbery. The sentence Wrice received in that case for each

---

does not inquire into the consideration a sentencing court gave to the sentencing factors or the sentence's reasonableness; the analysis merely requires comparing a movant's sentence to their Guideline range and asking whether the *extent* of the upward variance is surprising.

13

offense were within the Guideline range and were only imposed consecutively when required by statute. Thus, Wrice's sentence for the Sikeston robbery is not longer than the sentence a similarly situated defendant would receive either.

In summary, a defendant with Wrice's offense level and criminal history who committed two § 924(c) offenses, two armed robberies through two distinct courses of conduct, in two different jurisdictions, would receive a sentence substantially similar to Wrice's. Because Wrice's sentence is not longer than a sentence that a similarly situated defendant would receive—let alone "unusually" longer—Wrice has failed to show that she received an "unusually long sentence." Therefore, Wrice has not demonstrated that she qualifies for a ULS reduction and, consequently, she has failed to show that there are extraordinary and compelling reasons for compassionate release.

## V.    <u>CONCLUSION</u>

Wrice has failed to show her sentence is "unusually long" for the purposes of an Unusually Long Sentence Reduction. Even if Wrice somehow did, the § 3553(a) factors weigh against release. Wrice's other arguments have been addressed before and she presents no new facts that would change the Court's previous rulings.

For these reasons, the Court hereby **DENIES** Wrice's fourth motion for compassionate release. (Doc. 165).

**IT IS SO ORDERED.**
**DATED:  July 25, 2024**

*s/ J. Phil Gilbert*_____
**J. PHIL GILBERT**
**DISTRICT JUDGE**

14